# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

MARY TAYLOR and ALFRED TAYLOR,

    Plaintiffs,

vs.                                                                 Civil No. 04-905 WJ/DJS

ROSS E. ZUMWALT, M.D., Chief Medical
Investigator, NEW MEXICO OFFICE OF MEDICAL
INVESTIGATIONS, JEFFREY S. NINE, M.D.,
OMI EMPLOYEES, NEW MEXICO BOARD OF
MEDICAL INVESTIGATORS, NEW MEXICO
HEALTH SCIENCES CENTER, STATE OF
NEW MEXICO, SANDIA FUNERAL CARE, ROBERT
M. ZIMMERMAN, SANDIA FUNERAL CARE EMPLOYEES,

    Defendants.

## MEMORANDUM OPINION AND ORDER ON STATE DEFENDANTS' QUALIFIED IMMUNITY RULE 12(b) MOTION TO DISMISS

THIS MATTER comes before the Court pursuant to the State Defendants' Qualified Immunity Rule 12(b) Motion to Dismiss (Doc. 14). Having reviewed the submissions of the parties and being fully advised on the relevant law, I find the motion is not well taken with regard to the request for dismissal under Rule 4(m). However, I find the motion is otherwise well taken and will be granted.

**BACKGROUND**

Plaintiffs filed their Complaint in this matter on August 10, 2004.[1] On March 29, 2005, Plaintiffs filed returns of service indicating the State Defendants were served on March 22 and March 23, 2005. Plaintiffs allege various claims against the State Defendants for the autopsy and subsequent erroneous cremation of Abel Taylor. Plaintiffs' Complaint alleges that Ross E. Zumwalt, M.D. is the Chief Medical Investigator and head of the New Mexico State Office of Medical Investigations (OMI). Complaint ¶ 4. The Complaint alleges that Jeffrey S. Nine, M.D. is the medical investigator with OMI who performed the autopsy on the body of Abel Taylor. Complaint ¶ 6. In Count 1 brought pursuant to 42 U.S.C. § 1983, the Complaint alleges that the individual Defendants acted individually and not in their official capacities and were acting under color of state law. Complaint ¶¶ 28, 29. With regard to state agency Defendants, Count 1 alleges that the OMI and the New Mexico Health Sciences Center had policies, procedures and practices which encouraged the individuals' violations of Plaintiffs' constitutional rights. Complaint ¶ 32. Count 1 also alleges that OMI and the New Mexico Health Sciences Center failed to adequately train, direct, supervise or control the individual Defendants and this showed a wilfull and wanton indifference and deliberate disregard for the rights of Plaintiffs. Complaint ¶¶ 33, 34. The Complaint names Defendant State of New Mexico in the final paragraph of Count 1, but makes no specific allegations with regard to this Defendant. Complaint ¶ 35. Counts 2 through 5 are negligence claims under state tort law, Count 6 is a state law claim for intentional infliction of

---

[1] Named as Defendants were the State of New Mexico, several state agencies including the New Mexico Office of Medical Investigations, the New Mexico Board of Medical Investigators, and the New Mexico Health Sciences Center, and several state officials and employees including Ross E. Zumwalt, M.D., Jeffrey S. Nine, M.D. and OMI Employees. I will refer to all of these Defendants collectively as "State Defendants." When it is necessary to differentiate between agencies and individuals, I will do so.

emotional distress, and Count 7 alleges a violation of the New Mexico Religious Freedom Restoration Act.

Plaintiffs provide evidence that the State of New Mexico and Plaintiffs were involved in settlement negotiations beginning in July 2004, before the Complaint in this matter was filed.

The State Defendants filed the instant motion to dismiss arguing five grounds for dismissal. First, these Defendants argue they are entitled to dismissal under Fed. R. Civ. P. 12(b)(5) because Plaintiffs failed to serve Defendants within 120 days of filing the Complaint as required by Fed. R. Civ. P. 4(m). Second, the State Agency Defendants argue they are entitled to dismissal under Fed. R. Civ. P. 12(b)(1) of Plaintiffs' § 1983 claim in Count 1 because they are not "persons" for purposes of an action under § 1983. Third, the State Individual Defendants contend they are entitled to dismissal under Fed. R. Civ. P. 12(b)(1) of the § 1983 claim because they are sued in their official capacities only, as such it is really the State of New Mexico being sued, and again, the State is not a person for purposes of an action under § 1983. Fourth, the State Individual Defendants urge they are entitled to qualified immunity under Fed. R. Civ. P. 12(b)(6) as to Plaintiffs' claim under § 1983.[2] Finally, the State Defendants argue they are entitled to dismissal under Fed. R. Civ. P. 12(b)(1) of Plaintiff's state law claims because the New Mexico Tort Claims Act has not waived sovereign immunity for those claims.

**LEGAL STANDARD**

---

[2]Defendants actually assert that their qualified immunity motion to dismiss is brought pursuant to Fed. R. Civ. P. 12(b)(1) (lack of subject matter jurisdiction). However, a qualified immunity defense does not implicate the subject matter jurisdiction of the Court, and a motion to dismiss asserting the defense is properly brought pursuant to Fed. R. Civ. P. 12(b)(6). While this may appear a minor detail, the legal standard for ruling on a 12(b)(6) motion differs than those for ruling on other Rule 12(b) motions.

A party may go beyond the allegations contained in the complaint and challenge the facts upon which jurisdiction depends.  Sizova v. National Institute of Standards & Technology, 282 F3d 1320, 1324-25 (10th Cir. 2002); Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995). A Rule 12(b) motion to dismiss can challenge the substance of the complaint's jurisdictional allegation in spite of its formal sufficiency by relying on affidavits or any other evidence properly before the court.  Sizova, 282 F.3d at 1324-25; New Mexicans for Bill Richardson v. Gonzales, 64 F.3d 1495 (10th Cir. 1995).  A court has wide discretion to allow affidavits or other documents to resolve disputed jurisdictional facts under Rule 12(b).  In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion. Sizova, 282 F.3d 1324-25; Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995).  It is only in ruling on a motion to dismiss for failure to state a claim under Rule 12(b)(6) that a Court must convert the motion to one for summary judgment if it considers matters outside the pleadings. See Fed. R. Civ. P. 12(b).

In ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6),  "[a] complaint should not be dismissed for failure to state a claim unless it appears beyond all doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Curtis Ambulance of Florida, Inc. v Board of County Comm'n of the County of Shawnee, Kansas, 811 F.2d 1371, 1375 (10th Cir. 1987).  When deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must accept as true all well-pleaded allegations in the Complaint and construe them in the light most favorable to the plaintiff.  Tonkovich v. Kansas Bd. of Regents, University of Kansas, 254 F.3d 941, 943 (10th Cir. 2001).

**DISCUSSION**

I.       DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 4(m)

"The preliminary inquiry to be made under Rule 4(m) is whether the plaintiff has shown good cause for the failure to timely effect service." Espinoza v. United States, 52 F.3d 838, 841 (10th Cir. 1995) (interpreting Rule 4(m) in comparison to the former Rule 4(j) and concluding that the "good cause" inquiry is unchanged). The Tenth Circuit has not affirmatively defined good cause but has held that neglect, inadvertence, ignorance, actual notice, absence of prejudice, and the running of the statute of limitations are not sufficient to show good cause. See Espinoza, 52 F.3d at 841; Despain v. Salt Lake Area Metro Gang Unit, 13 F.3d 1436, 1439 (10th Cir. 1994). The Tenth Circuit standard is narrow and protects "only those plaintiffs who have been meticulous in their efforts to comply with the Rule." Despain, 13 F.3d at 1438 (referring to the "good cause" standard of former Rule 4(j)). Other courts have defined "good cause" as a good faith, reasonable basis for noncompliance considering factors outside a plaintiff's control such as sudden illness or catastrophe or some act by a defendant to evade service. Gambino v. Village of Oakbrook, 164 F.R.D. 271 (M.D. Fla. 1995). "If good cause is shown, the plaintiff is entitled to a mandatory extension of time." Espinoza, 52 F.3d at 841.

Plaintiffs point out that the State Defendants were aware of Plaintiffs' claims and were engaged in settlement negotiations before the Complaint was even filed. They note that the decision to not serve the State Defendants was based on these negotiations and a suggestion by the alleged agent of the State Defendants that Plaintiffs forego service during negotiations. They urge that the statute of limitations has run and a dismissal of the Complaint will have the effect of a dismissal with prejudice. However, none of these circumstances were beyond Plaintiffs' control, and Plaintiffs were not prevented from effecting timely service on the State Defendants.

Accordingly, Plaintiffs have failed to show good cause for their failure to effect timely service on Defendants.

However, even if a plaintiff fails to show good cause for failing to effect timely service, the district court must still consider whether a permissive extension of time may be warranted. Espinoza, 52 F.3d at 841. In deciding whether a permissive extension of time should be granted, the district court should consider whether the applicable statute of limitations will bar the action if dismissed and refiled. Id. at 842. A court should also determine whether policy considerations weigh in favor of a permissive extension. Id.

In this case, Plaintiffs' claims will be time barred if their Complaint is dismissed and they refile the action. Plaintiffs delayed service beyond the 120 days outlined in Rule 4(m) in favor of settlement negotiations. "Settlement negotiations should be encouraged as an alternative to lengthy, costly litigation." Heiser v. Association of Apartment Owners of Polo Beach Club, 848 F.Supp. 1482 (D. Haw. 1993). Based on these considerations, I will exercise my discretion and conclude that a permissive extension of time for service in this case is warranted. Accordingly, I will deny the State Defendants' motion to dismiss to the extent it seeks dismissal of Plaintiffs' Complaint under Rule 4(m) for failure to timely serve State Defendants.

II.     42 U.S.C. § 1983 CLAIM AGAINST STATE AGENCY DEFENDANTS

Arms of the states and state officials acting in their official capacity are not "persons" within the meaning of 42 U.S.C. § 1983 so they are immune from suit for damages under 42 U.S.C. § 1983. Will v. Michigan Department of State Police, 491 U.S. 58 (1989). Plaintiff concedes that the State Agency Defendants are not "persons" for purposes 42 U.S.C. § 1983 and that the § 1983 claim should be dismissed with regard to these Defendants. Accordingly, any §

1983 claim attempted to be brought in Count 1 against the State of New Mexico, the New Mexico Health Sciences Center, the New Mexico Office of the Medical Investigator and the New Mexico Board of Medical Investigators is hereby dismissed.

III.   42 U.S.C. § 1983 CLAIM AGAINST INDIVIDUAL DEFENDANTS

    A.   <u>Claims Against Individual State Defendants in their Individual Capacities</u>

Defendants' motion argues that the Individual State Defendants are named in their official capacities only and, as such, they are not "persons" within the meaning of 42 U.S.C. § 1983. Plaintiff's Response points out that the Complaint specifies that these Defendants are sued in their individual rather than official capacities for action under color of state law.  The Individual State Defendants sued in their individual capacities are "persons" for purposes of § 1983, and Defendants are not entitled to dismissal of the § 1983 claim against the Individual State Defendants on jurisdictional grounds.

    B.   <u>Qualified Immunity</u>

At the Fed. R. Civ. P. 12(b)(6) stage, qualified immunity protects defendants performing discretionary functions from individual liability unless, on the face of the complaint, the Plaintiffs allege the violation of clearly established statutory or constitutional rights of which a reasonable person would have known.  <u>See</u> <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982).  The Tenth Circuit has stated that the best approach in deciding the issue of qualified immunity is to first determine whether the Plaintiffs have alleged a violation of a constitutional right, and, only then, determine whether the right allegedly implicated was clearly established.  <u>See</u> <u>Lybrook v. Farmington Mun. Sch. Bd. of Educ.</u>, 232 F.3d 1334, 1337 (10th Cir. 2000); <u>Tonkovich v. Kansas Bd. of Regents</u>, 159 F.3d 504, 516 (10th Cir. 1998).  In order for the law to be clearly

established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains. Camfield v City of Oklahoma City, 248 F.3d 1214, 1228 (10th Cir. 2001).

Plaintiffs' Complaint alleges that Abel Taylor was found dead in Albuquerque, New Mexico on August 16, 2002, and OMI was called to the scene. He was identified at the scene as Abel Taylor and as a Native American. His body was transported to OMI, and Jeffrey S. Nine performed an autopsy on August 17, 2002. This was done before OMI located or contacted Abel Taylor's next of kin, and OMI did not obtain consent from next of kin for the autopsy.

On August 21, 2002, OMI notified Plaintiffs and Abel Taylor's brother and sister of Abel Taylor's death. Plaintiffs told OMI that they wished Abel Taylor's body buried near Chinle, Arizona. However, Abel Taylor's body had been erroneously labeled by OMI as the body of another individual and had been transported to Sandia Funeral Care on August 19, 2002. On August 21, 2002, Sandia Funeral Care erroneously cremated Abel Taylor's body.

Abel Taylor and Plaintiffs are Navajo Indians, and autopsy and cremation are inconsistent with their traditional religious beliefs and practices.

Plaintiffs allege that Defendants interfered with Plaintiffs' right to free exercise of their religion when they performed an autopsy on the body of Abel Taylor and when they caused the body of Abel Taylor to be cremated. Plaintiffs also allege that Defendants violated their right to due process when they performed an autopsy on Abel Taylor and had his body cremated without giving Plaintiffs notice or opportunity to consent.

While the Court must normally first determine whether a plaintiff has alleged a violation of a constitutional right before proceeding to determine whether the right was clearly established,

neither party has briefed the issue whether Plaintiffs have an interest protected by due process or whether Plaintiffs' First Amendment rights are implicated assuming the truth of the allegations in their Complaint.  Instead, Defendants argue that, even if Plaintiffs have alleged a constitutional violation, the rights implicated were not clearly established.  In arguing that Plaintiffs' constitutional rights were clearly established, Plaintiffs' response cites only to <u>Begay v. State of New Mexico</u>, 723 P.2d 252 (N.M. App. 1985) <u>reversed on other grounds by</u> <u>Smialek v. Begay</u>, 721 P.2d 1306 (N.M. 1986), a New Mexico Court of Appeals case.  While this case is helpful to the Court for many reasons, it does not address whether Plaintiffs have alleged a constitutional right and does not address whether the right was clearly established.

The Court has had to engage in some independent research on Plaintiffs' potential constitutional claims in order to determine whether there are any clearly established constitutional rights implicated in this case, and most of these cases analyze whether persons in circumstances similar to Plaintiffs have suffered a violation of their constitutional rights.  However, it would be imprudent for the Court to do its own full analysis of whether Plaintiffs have alleged a constitutional violation without some benefit of briefing by the parties.  Thus, the Court will assume for purposes of this motion that Plaintiffs have alleged violations of constitutional rights and will proceed to determine whether those rights were clearly established.

A law is clearly established when there is a Supreme Court or Tenth Circuit opinion on point or when the clearly established weight of authority from other courts have found the law to be as a plaintiff argues.  Plaintiff essentially argues four separate violations.  Plaintiffs allege First Amendment and Due Process violations by the Defendants in performing an autopsy on the body

9

of Abel Taylor and First Amendment and Due Process violations in causing Abel Taylor's body to be cremated.

        1.      Claims Arising From the Autopsy

The little authority available on whether an autopsy violates the survivors' constitutional rights does not support Plaintiffs' argument that the autopsy in this case violated their First Amendment or due process rights. In Kickapoo Traditional Tribe of Texas v. Chacon, 46 F.Supp.2d 644 (W.D. Tex. 1999), the court held that Texas statutes authorizing autopsies were neutral with regard to religious beliefs so the Texas statutes did not violate an Indian Tribe's First Amendment rights to the free exercise of religious beliefs. Similarly, in Yang v. Sturner, 750 F.Supp. 558 (D.R.I. 1990), the court determined that the Rhode Island statute governing autopsy was generally applicable and facially neutral so it did not violate the plaintiffs' First Amendment Free Exercise rights even though it profoundly impaired the plaintiffs' religious freedom.[3]

These are the only cases found by the Court to be on point. Accordingly, there is no weight of authority from other courts finding that an autopsy performed without the consent of a decedent's next of kin violates the next of kin's First Amendment rights, any such constitutional

---

[3]New Mexico statutes authorize a deputy medical investigator to perform an autopsy when there is suspicion that a death was caused by a criminal act or omission or when the cause of death is obscure. N.M. Stat. Ann. 1978 §§ 24-11-7, 24-12-4(D). These statutes are neutral with respect to religious beliefs, so an autopsy performed in accordance with these statutes would not violate Plaintiffs' First Amendment rights. See City of Boerne v. Flores, 521 U.S. 507, 534-35 (1997). Effective June 17, 2005, a medical investigator must avoid with due diligence the autopsy of a deceased person who is a member of a federally recognized Indian nation, tribe or pueblo, but continues to have authority to perform an autopsy when legally required due to possible criminal acts or omissions or when the cause of death is obscure. N.M. Stat. Ann. 1978 § 24-11-6.1.

right is not clearly established, and the individual State Defendants are entitled to the dismissal of this claim.

In <u>Montgomery v. County of Clinton</u>, No. 90-1940, 1991 WL 153071 (6th Cir. Aug. 9, 1991) (unpublished disposition), a family alleged a due process violation by county officials for performing an autopsy without the family's consent. The court determined that a state statute requiring that a medical examiner make a diligent effort to notify the next of kin of a decision to perform an autopsy did not create a sufficient liberty or property interest to give rise to a procedural due process claim. This is the only case on point found by the Court and does not find the law to be as Plaintiff has argued. Accordingly, there is no clearly established procedural due process right to notice and opportunity to be heard with regard to an autopsy performed on a family member, and the individual State Defendants are entitled to dismissal of this claim.

      2.      <u>Claims Arising From the Cremation</u>

Three United States circuit courts of appeals have determined that, where state laws provide the next of kin the right to determine the disposition of the remains of a decedent, the next of kin have a sufficient property interest protected by the due process clause. <u>See</u> <u>Whaley v. County of Tuscola</u>, 58 F.3d 1111 (6th Cir. 1995) (next of kin have constitutionally protected property interest in organs under Michigan law such that removal without consent may violate due process); <u>Brotherton v. Cleveland</u>, 923 F.2d 477 (6th Cir. 1991) (next of kin have constitutionally protected property interest under Ohio law such that removal of organs without consent may violate due process); <u>Arnaud v. Odom</u>, 870 F.2d 304 (5th Cir. 1989) (next of kin have a constitutionally protected property interest under Louisiana law); <u>Fuller v. Marx</u>, 724 F.2d 717 (8th Cir. 1984) (next of kin have constitutionally protected property interest under Arkansas

law).  While these cases support Plaintiffs' view of the law, there is not sufficient weight of authority such that a reasonable person would have known that the conduct alleged in this case violated Plaintiffs' constitutional rights.  Thus, the law was not clearly established, and the individual State Defendants are entitled to the dismissal of this claim.

The Court was unable to find any case addressing whether an official who mishandles the body of a decedent has violated the next of kin's First Amendment free exercise rights.[4]  There is thus no weight of authority finding the law to be as Plaintiffs' maintain, and the law was thus not clearly established.  The individual State Defendants are accordingly entitled to the dismissal of this claim.

At the time of the events alleged in Plaintiffs' Complaint, the law was not clearly established that the performance of an autopsy without notice to Plaintiffs and without their consent would violate Plaintiffs' First Amendment or due process rights.  Nor was it clearly established that the mislabeling and subsequent accidental cremation of Abel Taylor's body would violate Plaintiffs' First Amendment or Due Process rights.  Accordingly, the individual State Defendants are entitled to qualified immunity with regard to all of Plaintiffs' claims brought pursuant to 42 U.S.C. § 1983.

IV.     STATE TORT LAW CLAIMS AGAINST STATE DEFENDANTS

---

[4] In Fuller, the court held that there was no violation of the First Amendment when an official disposed of a decedent's organs in accordance with a state law requiring him to do so. 724 F.2d at 720.  Fuller is distinguishable from this case, however, because this case does not allege that Defendants' conduct was in accordance with state law; rather this case alleges that Defendants' conduct was not in accordance with state law because Defendants mislabeled the body of Abel Taylor such that he was accidentally cremated.

The State of New Mexico cannot be sued without its consent.  Palmer v. State of Ohio, 248 U.S. 32, 34 (1918); Sangre de Cristo Dev. Corp. v. City of Santa Fe, 503 P.2d 323 (N.M. 1972).  The State of New Mexico has retained its sovereign immunity, but consented to be sued under specific circumstances in the New Mexico Tort Claims Act, N.M. Stat. Ann. 1978 § 41-4-1 et seq.  This sovereign immunity applies to all governmental entities and public employees while acting within the scope of their duties.  N.M. Stat. Ann. 1978 §§ 41-4-2(A), 41-4-4(A).  Immunity is waived for "the negligence of public employees while acting in the scope of their duties in the operation of any hospital, infirmary, mental institution, clinic, dispensary, medical care home, or like facilities."  N.M. Stat. Ann. 1978 § 41-4-9.  Immunity is also waived for "the negligence of public employees licensed by the state or permitted by law to provide health care services while acting within the scope of their duties of providing health care services."  N.M. Stat. Ann. 1978 § 41-4-10.

Defendants argue that no waiver of immunity in the New Mexico Tort Claims Act applies to the State Defendants and, accordingly, the State Defendants are entitled to dismissal of the state tort claims.  Plaintiffs urge that Sections 41-4-9 and 41-4-10 apply to Defendants Zumwalt, Nine and other OMI Employees.

In Begay, plaintiffs sued the medical investigator under state tort law for performing an autopsy on the Navajo decedent.  The New Mexico Court of Appeals held that the medical examiner was not operating a hospital, infirmary, mental institution, clinic, dispensary, medical care home or like facility, and that immunity was not waived under Section 41-4-9.  723 P.2d at 256.  The court also held that the medical examiner was not a health care provider, and immunity was not waived under Section 41-4-10.  Id.

While Plaintiffs acknowledge that <u>Begay</u> specifically held that the waivers in sections 41-4-9 and 41-4-10 do not apply to the OMI or the medical examiner, Plaintiff urges that subsequent legislation should be read as an intent by the State of New Mexico Legislature that a waiver of the state medical examiner's immunity be read into either or both of the sections.  Specifically, Plaintiffs urge that the definition of "health care provider" in the Medical Malpractice Act evidences a legislative intent that the state medical examiner be subject to suit under the Tort Claims Act.

N.M. Stat. Ann. 1978 § 41-5-3 is part of the Medical Malpractice Act and defines "health care provider" as including any person licensed by the state to provide health care or professional services as a doctor of medicine.  As Plaintiff points out, the state medical examiner, the district examiners and the pathologists who perform autopsies are required to be licensed physicians in New Mexico.  <u>See</u> N.M. Stat. Ann. 1978 § 24-11-3(A) and (C).  However, Plaintiff does not address the fact that the Medical Malpractice Act was passed in order to provide professional liability insurance to all health care providers, N.M. Stat. Ann. 1978 § 45-5-2, and participation by health care providers is optional, N.M. Stat. Ann. 1978 § 45-5-5.  The fact that the intent of the legislature in passing the Medical Malpractice Act was to provide professional liability insurance to all health care providers tends to imply that the reason for the broad definition given to "health care provider" was to increase the persons able to obtain such insurance, not to waive sovereign immunity for the medical examiner.

The Court does not perceive even a remote connection between the scope of the waivers of immunity in the New Mexico Tort Claims Act and the definition of "health care provider" in the Medical Malpractice Act, and I certainly do not read the Medical Malpractice Act as a waiver

14

of the medical examiner's immunity.  Begay was decided in 1986.  If the New Mexico legislature wished to waive immunity for the state medical examiner, it could certainly have done so clearly and expressly in the intervening 19 years.  Because it has not done so, I conclude that Plaintiffs' state tort claims against the State Defendants must be dismissed as there is no waiver of immunity applicable to Plaintiffs' claims.

V.    CLAIM BROUGHT PURSUANT TO THE NEW MEXICO RELIGIOUS FREEDOM RESTORATION ACT

Defendants have been given leave to file a supplemental motion to dismiss with regard to Plaintiffs' claim in Count 7 brought under the New Mexico Religious Freedom Restoration Act. See Order filed October 13, 2005 (Doc. 31).  Accordingly, this Memorandum Opinion and Order does not address this claim.  Additionally, because there are still outstanding issues to be resolved on a Rule 12 motion, this Order does not trigger the State Defendants' ten-day time limit to file an Answer under Rule 12(a)(4)(A).

**CONCLUSION**

IT IS THEREFORE ORDERED that the State Defendants' Qualified Immunity Rule 12(b) Motion to Dismiss (Doc. 14) is DENIED IN PART to the extent it seeks dismissal of Plaintiffs' Claims pursuant to Fed. R. Civ. P. 12(b)(6).

IT IS FURTHER ORDERED that the State Defendants' Qualified Immunity Rule 12(b) Motion to Dismiss (Doc. 14) is hereby GRANTED IN PART in that Plaintiffs' claims in Counts 1, 2, 3, 4, 5 and 6 against Defendants Ross E. Zumwalt, Chief Medical Investigator, New Mexico Office of Medical Investigations, Jeffrey S. Nine, M.D., OMI Employees, New Mexico Board of

Medical Investigators, New Mexico Health Sciences Center and State of New Mexico are

DISMISSED.

                                          _____
                                          UNITED STATES DISTRICT JUDGE