IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MARY TAYLOR and ALFRED TAYLOR,

    Plaintiffs,

vs.                                                                 Civil No. 04-905 WJ/DJS

ROSS E. ZUMWALT, M.D., Chief Medical
Investigator, NEW MEXICO OFFICE OF MEDICAL
INVESTIGATIONS, JEFFREY S. NINE, M.D.,
OMI EMPLOYEES, NEW MEXICO BOARD OF
MEDICAL INVESTIGATORS, NEW MEXICO
HEALTH SCIENCES CENTER, STATE OF
NEW MEXICO, SANDIA FUNERAL CARE, ROBERT
M. ZIMMERMAN, SANDIA FUNERAL CARE EMPLOYEES,

    Defendants.

## MEMORANDUM OPINION AND ORDER DENYING SUPPLEMENTAL MOTION TO DISMISS

THIS MATTER comes before the Court upon the State Defendants' Supplemental Rule 12(b)(6) Motion to Dismiss New Mexico Religious Freedom Restoration Act Allegations, filed November 2, 2005 (**Doc. 34**).[1]  Having considered the parties' pleadings and the applicable law, I find that Defendants' motion is not well-taken and will be denied.

### Background

Plaintiffs allege various claims against the State Defendants for the autopsy and

---

[1] "State Defendants" include other Defendants named in this action: the State of New Mexico, several state agencies including the New Mexico Office of Medical Investigations, the New Mexico Board of Medical Investigators, and the New Mexico Health Sciences Center, and several state officials and employees including Ross E. Zumwalt, M.D., Jeffrey S. Nine, M.D. and OMI Employees.  The term "State Defendants" will be used throughout this Memorandum Opinion unless it is necessary to differentiate between agencies and individuals.

subsequent erroneous cremation of Abel Taylor.  The Complaint alleges that Abel Taylor was found dead in Albuquerque, New Mexico on August 16, 2002, and OMI was called to the scene.  He was identified at the scene as Abel Taylor and as a Native American.  His body was transported to OMI, and Jeffrey S. Nine, M.D., a medical investigator with OMI, performed the autopsy on August 17, 2002.  This was done before OMI located or contacted Abel Taylor's next of kin, and OMI did not obtain consent from next of kin for the autopsy.

On August 21, 2002, OMI notified Plaintiffs and Abel Taylor's brother and sister of Abel Taylor's death.  Plaintiffs told OMI that they wished Abel Taylor's body buried near Chinle, Arizona.  However, Abel Taylor's body had been erroneously labeled by OMI as the body of another individual and had been transported to Sandia Funeral Care on August 19, 2002.  On August 21, 2002, Sandia Funeral Care erroneously cremated Abel Taylor's body.  Abel Taylor and Plaintiffs are Navajo Indians, and autopsy and cremation are inconsistent with their traditional religious beliefs and practices.

Plaintiffs allege that Defendants interfered with Plaintiffs' right to free exercise of their religion when they performed an autopsy on the body of Abel Taylor and when they caused the body of Abel Taylor to be cremated.

The Court recently ruled on a motion to dismissed filed by the State Defendants with regard to Plaintiffs' federal claims, and state claims brought under the New Mexico Tort Claims Act.  The Court determined that the State Defendants were entitled to qualified immunity with regard to Plaintiffs' claims brought under 42 U.S.C. § 1983 (First Amendment and Due Process for Plaintiff's claims arising from the autopsy as well as from the cremation), and that the state tort claims were dismissed because there was no waiver of immunity applicable to those claims.

Doc. 32.  The one remaining claim (Count 7) alleges a violation of the New Mexico Religious Freedom Restoration Act, N.M.S.A. 1978, §§ 28-22-1 through 28-22-4 (2000) ("NM RFRA"). State Defendants were allowed to file a supplemental motion to dismiss this claim, which is the subject of this motion.

## Discussion

Dismissal of a complaint pursuant to Rule 12(b)(6) will be upheld only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  The Court must accept as true all well-pleaded facts, as distinguished from conclusory allegations, and view those facts in the light most favorable to the nonmoving party.  Maher v. Durango Metals, Inc., 144 F.3d 1302, 1304 (10th Cir. 1998).

Plaintiffs allege interference with their rights to free exercise of religion because the State Defendants performed the autopsy and because the State Defendants allowed the body of Plaintiffs' son to be released for cremation by another defendant.  State Defendants contend that Plaintiff's claims under NM RFRA should be dismissed because Plaintiffs lack standing to pursue a claim on behalf of a decedent under NM RFRA, and because Plaintiffs have failed to plead the prima facie elements necessary to establish a violation of the NM RFRA.

I.      Standing under NM RFRA

Under the terms of NM RFRA, "[a] government agency shall not restrict a person's free exercise of religion . . . ."  N.M.S.A. 1978 § 28-22-3 (emphasis added).  Section 28-22-4(A) of the NM RFRA provides that "[a] person whose free exercise of religion has been restricted by a violation of the New Mexico Religious Freedom Restoration Act may assert that violation as a

3

claim or defense in a judicial proceeding and obtain appropriate relief against a government agency. . . ."

State Defendants point out that the decedent's parents -- Plaintiffs in this action -- are not suing Defendants as decedent's personal representatives, but rather in their capacities as individuals for redress of their own personal, individualized harm.  For this reason, State Defendants contend that Plaintiffs are not "persons" entitled to protection under NM RFRA because they have not alleged any facts which indicate that the performance of an autopsy or the mistaken release of Abel Taylor's body prevented them from exercising their religious beliefs.

For purpose of construing a New Mexico statute, "person" is defined as: "an individual, corporation, business trust, estate, trust, partnership, limited liability company, association, joint venture or any legal or commercial entity. . . ." N.M.S.A. 1978, § 12-2A-3.  State Defendants conflate the requirements of standing with the requirement that a plaintiff allege facts sufficient to state a claim under Fed.R.Civ.P. 12(b)(6).   The Court finds that any argument State Defendants may raise regarding a standing issue is foreclosed by Smialek v. Begay, 104 N.M. 375 (1986), which makes clear that the surviving parent(s) have standing to assert damages resulting from an alleged wrongful autopsy of a decedent.  Although the New Mexico Supreme Court's holding in that case involved a § 1983 claim for violation of a First Amendment right to free exercise of religion, it is also applicable to this situation which questions who has standing to assert an alleged violation of the free exercise of religious beliefs.  Further, the holding in Smialek was based on an analysis that included New Mexico's Wrongful Death Act and its Probate Code.  There is no reason why New Mexico courts would not extend the Smialek holding to claims brought under NM RFRA which provides a state remedy for the violation of an individual's right to the free

4

exercise of religion.

II.     Whether Plaintiffs Have Sufficiently Alleged Injury

State Defendants also argue that Plaintiffs' Count 7 should be dismissed because the Complaint contains only a conclusory allegation that Plaintiff's rights were violated under the NM RFRA, lacks any facts regarding how the exercise of their own religious beliefs were compromised or precluded by the performance of an autopsy or the mistaken release of their son's body for cremation, and does not adequately describe any action of State Defendants that have restricted their own free exercise of religion.

Federal procedural rules require only that a pleading be "simple, concise, and direct." Fed.R.Civ.P. 8(e).  Further, Rule 8(f) provides that "[a]ll pleadings shall be construed as to do substantial justice."  The Complaint alleges that "autopsy and cremation are inconsistent with their traditional religious beliefs and practices."  Complaint, ¶ 30.  I find that this language identifies a connection between State Defendants' alleged wrongful conduct and a violation of Plaintiffs' personal free exercise of religion sufficient to withstand the motion to dismiss on this basis since it expresses that State Defendants' alleged conduct is repugnant to the religious beliefs they presently hold.[2]

III.    Other Arguments

The Court declines to consider State Defendants' other arguments concerning Plaintiffs'

---

[2] In their response to the motion to dismiss, Plaintiffs elaborate that Defendants' conduct has "ensured that Abel Taylor will not proceed into the afterlife, and that his parents will be denied the opportunity to be with him again when they die and cross over."  Resp. at 4.  State Defendants view this statement as indicative of a harm that is a future, not a present, harm – which would lead to the patently absurd conclusion that Plaintiffs could not bring this case until after they themselves have crossed into the afterlife and are deprived of the opportunity to be with their son.

failure to state a claim, since those arguments would require an analysis of Plaintiffs' claims on the merits.  State Defendants argue that NM RFRA has not been violated because the New Mexico autopsy statute, N.M.S.A. 1978 § 24-12-4, is "religion-neutral" because the statute allows an autopsy to be performed on that person when it is suspected that death was caused by a criminal act or omission, regardless of the religious belief of that person.[3]  State Defendants also argue that they are immune from any NM RFRA claim that arises from the negligent release of Abel Taylor's body, on the basis that Plaintiffs' claims under the Tort Claims Act were dismissed because sovereign immunity was not waived for those claims.

Because the instant motion is a motion to dismiss, it would be inappropriate to make an assumption (as State Defendants urge) that the autopsy was performed because the suspected cause of death was obscure or the result of a criminal act or omission.  Such an assumption would make premature factual conclusions on State Defendants' conduct with regard to the autopsy statute.  Similarly, the Court declines to examine the merits of Plaintiffs' claims with regard to State Defendants' conduct under the cremation statute.  While State Defendants describe the situation as a mistake in the release of the wrong body, Plaintiff contends that no permit was issued for any body that was released, as required under the statute.[4]

---

[3] Section 24-12-4 authorizes an autopsy or post-mortem examination to be performed on the body of a deceased person by a physician or surgeon in certain situations, such as whenever consent to the procedure has been given by authorization from specified individuals under the statute (e.g., the deceased's surviving spouse, see § 24-12-4(A)(3)), when the "district attorney is conducting a criminal investigation" (§ 24-12-4(C)); or when it is suspected that the death was caused by a criminal act or omission "or if the cause of death is obscure" (§ 24-12-(D)).

[4] N.M.S.A. 1978, § 24-14-23(E) requires that "[a] permit for cremation of a body shall be required prior to the cremation . . . issued by the state medical investigator to a licensed funeral service practitioner, direct disposer or any other person who makes the arrangements for final disposition."

State Defendants argue that Plaintiffs' claims under NM RFRA should be dismissed because the federal and state tort claims were dismissed. This argument has no logical or legal connection to the Court's rulings on those claims. The federal claims were dismissed on the basis of qualified immunity, because the law regarding Plaintiffs' claims arising from the autopsy and cremation were not clearly established. Doc. 32 at 11-12. With regard to Plaintiffs' claims arising from the cremation, State Defendants offer no legal basis as to why immunity under the Tort Claims Act should be extended to claims brought under NM RFRA, particularly when the language of NM RFRA specifically waives sovereign immunity, defining "government agency" as "the state or any of its political subdivisions, institutions, departments, agencies, commissions, committees, boards, councils, bureaus or authorities." § 28-22-2.

Based on the allegations in the complaint and the arguments raised in response to the motion to dismiss, the Court understands Plaintiffs' assertions to be directed against conduct by the Defendants which allegedly did not follow or comply with the requirements of the autopsy and cremation statutes, rather than as direct challenges to the statutes themselves. In other words, Plaintiffs do not seem to be alleging that New Mexico's autopsy and cremation statutes in themselves violate or are inconsistent with NM RFRA.[5] Thus, the Court denies State Defendants' motion to dismiss only on the basis that Plaintiffs have standing to bring a claim under NM RFRA and that they have stated an injury in the Complaint. I make no determination or conclusions regarding whether the State Defendants are liable under the facts alleged, or

---

[5] In ruling on the previous motion to dismiss, the Court dismissed the federal claims on qualified immunity grounds, yet at the same time noted that case law could not be found which would support a claim that state autopsy statutes themselves violated the right to free exercise of religion, in a First Amendment context. Doc. 32 at 11, 12.


regarding any other basis for dismissal not raised by State Defendants.

**THEREFORE,**

**IT IS ORDERED** that the State Defendants' Supplemental Rule 12(b)(6) Motion to Dismiss New Mexico Religious Freedom Restoration Act Allegations **(Doc. 34)** is hereby DENIED for the reasons described above.

_____
UNITED STATES DISTRICT JUDGE